1  **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2  Connie M. Fickel, Esq. (SBN 210286)
   connie.fickel@qpwblaw.com
3  Christopher Lund (NV Bar No. 12435)
   (Pro Hac Vice)
4  christopher.lund@qpwblaw.com
5  515 S. Flower Street, Suite 1800
   Los Angeles, California 90071
6  Telephone: 213-371-5380
7  Facsimile: 213-371-5381

8  Dustin J. Dorsey, Esq. (SBN 356143)
   dustin.dorsey@qpwblaw.com
9  1001 Galaxy Way, Suite 312
   Concord, CA 94520
10 Telephone: 925-466-4230
11 Facsimile: 925-466-4231

12 *Attorneys for Defendant John Monarch*

13
14                    **UNITED STATES DISTRICT COURT**

                     **CENTRAL DISTRICT OF CALIFORNIA**
15

16 USA HERALD LLC,                    Case No. 8:25-cv-00569-MEMF-KES

17          Plaintiff,
                                      **DEFENDANT      JOHN    MONARCH'S**
18 v.                                 **OPPOSITION       TO     PLAINTIFF'S**
                                      **CORRECTED   FIRST   MOTION   FOR**
19 JOHN MONARCH, et al,               **LEAVE TO AMEND, INSTANTER**

20          Defendants.

21

22

23     **I.      INTRODUCTION**

24          Plaintiff USA Herald LLC ("Plaintiff") seeks leave to amend its Complaint to replace a

25 factual fabrication with a legal fallacy.

26          For nearly six months, Plaintiff has known that its sole basis for jurisdiction - the incorrect

27 allegation that Defendant John Monarch filed a counter-notification consenting to jurisdiction –

28 was false. Now, facing a fully briefed Motion to Dismiss and the dismissal of its case, Plaintiff



1

1  seeks to amend its complaint based on a theory it first raised in briefing in this matter in June 2025:

2  that jurisdiction purportedly exists because Plaintiff's website has a "California audience."

3      The Court should deny leave to amend because the proposed amendment is futile, the delay

4  is inexcusable, and the tactic is prejudicial.

5      The proposed First Amended Verified Complaint ("FAC") fails to cure the jurisdictional

6  defect. Plaintiff's new allegations regarding its own viewership and engagement rates rely on a

7  **plaintiff-centric** jurisdictional theory that the Supreme Court rejected in *Walden v. Fiore*.

8  Furthermore, a wall of authority in this Circuit – including *Doe v. Geller*, *Raven v. Molyneux*, and

9  *Browne v. McCain* – confirms that sending DMCA notices to a California-based service provider

10  like Google does not constitute "express aiming" at the forum.

11      Plaintiff held this alleged viewership data in June 2025 but waited until December 2025 to

12  seek amendment. This dilatory conduct suggests a bad-faith effort to delay an adverse ruling. The

13  Court should decline Plaintiff's invitation to restart the clock on a meritless theory of jurisdiction.

14  II.    **FACTUAL AND PROCEDURAL BACKGROUND**

15      **A. Plaintiff's Original Theory.**

16      Plaintiff filed this action on March 24, 2025, alleging jurisdiction based on a single specific

17  fact: that Defendant submitted a DMCA "counter-notification" designating a Newport Beach,

18  California address. (Dkt. 1 at ¶ 30).

19      **B. Plaintiff's Unexplained Delay.**

20      In its June 16, 2025 Opposition to the MTD, Plaintiff tacitly conceded the counter-notice

21  allegation was false. Instead, Plaintiff attempted to pivot, arguing that jurisdiction was proper

22  because USA Herald has a "California audience." Plaintiff supported this new theory with the

23  Declaration of Richard Gorman, dated June 2025, detailing viewership statistics. (Dkt. 35, 40-3).

24      Thus, **six months ago**, Plaintiff knew its Complaint was factually erroneous and possessed

25  the very facts it now seeks to plead. Yet, Plaintiff sat on its hands. It was not until November 28,

26  2025 – after the MTD was fully briefed and ripe for decision – that Plaintiff sought an *ex parte*

27  stay to file the instant Motion, which was then set for hearing on December 11, 2025. (Dkt. 66).

28



Plaintiff sought that *ex parte* relief so it could take leave to amend its Complaint. The procedural history thus shows that Plaintiff waited until just prior to the possible ruling on the instant Motion to begin trying for amendment. The Court rightfully denied that *ex parte* application.

Now, Plaintiff seeks leave to amend on that theory first raised six months ago. Plaintiff's motion not only represents a bad faith and undue delay, but is a futile amendment because it does not change the failure of jurisdiction in California.

The Court should decline to allow Plaintiff leave to amend.

### III.    LEGAL STANDARD

While leave to amend is generally freely given, the Supreme Court has identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

A proposed amendment is futile if it "would be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). If the amended complaint cannot survive a jurisdictional challenge, leave to amend must be denied. *See Freedom Gold USA LLC v. Bank of Am., N.A.*, 766 F. Supp. 3d 968, 971 (C.D. Cal. 2025) (citations omitted); *Braxton v. Cnty. of L.A.*, No. 23-3345, 2024 U.S. App. LEXIS 30883, at *6 (9th Cir. Dec. 6, 2024).

Courts in this District also routinely deny leave to amend where there is undue delay and prejudice to the opposing party. *See Stambanis v. TBWA Worldwide, Inc.*, No. 2:19-cv-3962-ODW (JEMX), 2020 U.S. Dist. LEXIS 127426, at *5 (C.D. Cal. July 20, 2020) (denying leave where amendment would cause prejudice and undue delay). The "consideration of prejudice to the opposing party carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### IV.    ARGUMENT

**C. The Proposed Amendment Is Futile: Plaintiff Cannot Manufacture Jurisdiction Through Its Own Audience, And There is No Purposeful Direction or Express Aiming.**



### 1. The proposed amendment is futile as it does not create the requisite purposeful direction for specific jurisdiction.

Plaintiff's proposed FAC abandons the "counter-notice" theory and substitutes it with three legally irrelevant allegations: (1) USA Herald's "California viewership"; (2) Defendant's submission of notices to Google; and (3) Google's Terms of Service. Under settled law, none of these contacts establish specific jurisdiction over a South Carolina resident who simply sent a DMCA takedown notice to Google regarding content available on a worldwide website.

The Ninth Circuit employs a three-part test to determine whether a court has specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011)

Here, Plaintiff's audience data is legally irrelevant. Plaintiff attempts to bootstrap jurisdiction by alleging that *its* website has a large California audience. (Motion at 4). This argument is contrary to the principles of jurisdiction. *See Walden v. Fiore*, 571 U.S. 277 (2014).

In *Walden*, the Supreme Court held that the "relationship must arise out of contacts that the 'defendant himself creates with the forum State.'" *Id.* at 284. The Court rejected the lower court's reliance on the defendant's knowledge of the plaintiff's "strong forum connections." *Id.* at 289.

The Ninth Circuit reinforced this in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017), holding that looking to where the plaintiff has an audience "impermissibly allow[s] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1070. As more completely stated in *Axiom*:

> In *Walden*, the Supreme Court rejected our conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable



harm" the [*1070] plaintiffs suffered in the forum, comprised sufficient minimum contacts. 134 S. Ct. at 1124-25 (citation omitted). The Court found that our approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1125. The Court made clear that we must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum. *Id.* at 1124-25.

*Id.* at 1069-1070.

Here, Plaintiff's proposed allegations regarding *its* "engagement rates" and *its* "California news section" focus entirely on Plaintiff's connections to the forum, not Defendant's. These statistics are legally irrelevant.

Moreover, the proposed FAC alleges that Defendant targeted articles about *himself* – John Monarch – not Plaintiff's "California news section." There is no allegation that Defendant targeted California-specific content, that the de-indexing was unique to California viewers, or that the "California news section" had anything to do with the dispute. Defendant, a resident of Greenville, South Carolina, directed his alleged conduct at content concerning his own name, not at the state of California or its local news consumers. As *Walden* makes clear, the Plaintiff cannot be the only link between the Defendant and the forum.

### 2. Plaintiff's Proposed Amendment is Futile Because Sending Notices to a California Tech Company Is Not "Express Aiming" and Cannot Establish Jurisdiction.

Plaintiff alleges that Defendant sent 15 DMCA notices to Google. (Proposed FAC ¶ 15). However, interacting with a California-based service provider (like Google, YouTube, or Facebook) does not constitute "express aiming" at California.

Plaintiff's reliance on *Doe v. Geller* to support its theory is self-defeating. While Plaintiff cites *Doe* for the proposition that courts consider the "amount of communications," the court's actual holding was that sending a DMCA takedown notice to a California service provider was insufficient to establish jurisdiction. *Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008). The court found that such communications constituted only "attenuated" contacts with the state, rather than a substantial interjection into the forum. *Id.* at 1007. *Doe* expressly warned that basing jurisdiction on the location of a service provider would improperly transform California into the



1   "international court of internet law." *Id.* at 1009.

2          Similarly, Plaintiff's reliance on *Calder v. Jones* to argue that the "brunt of the harm" was

3   felt in California is misplaced. In *Calder*, jurisdiction existed because the defendants wrote and

4   edited a libelous article *about* a California resident for a publication with its largest circulation in

5   that state. Here, Defendant is not the author of the content but the party seeking its removal.

6   Furthermore, unlike the individual plaintiff in *Calder* who lived and worked in California, Plaintiff

7   is a Delaware LLC with no alleged physical headquarters in California. The alleged harm – de-

8   indexing from Google – is a global action taken by a third-party service provider, not a harm

9   uniquely tethered to the forum state by Defendant's conduct. And, again, the content at issue was

10  about *John Monarch*, a resident of **South Carolina**, not a California resident. Unlike *Calder*,

11  where the subject matter connected the defendant to the forum, here the subject matter connects

12  the dispute to South Carolina.

13         Moreover, courts in this Circuit have built a wall of authority rejecting Plaintiff's theory.

14  In *Raven v. Molyneux*, 2015 U.S. Dist. LEXIS 187792 (C.D. Cal. Jan. 27, 2015), this District held

15  that "merely sending nine separate takedown notices from outside California to YouTube's agent

16  in California is insufficient to establish specific jurisdiction." *Id.* at *10. Likewise, in *Kazakhstan*

17  *v. Ketebaev*, 2017 U.S. Dist. LEXIS 211198 (N.D. Cal. Dec. 21, 2017), the court held that "[t]he

18  mere fact that Google—the company that owns the servers—is headquartered in California is not

19  enough to establish that [defendant]... expressly aimed his alleged conduct at California." *Id.* at

20  *20. As stated in *Kazakhstan*:

21              Indeed, in *Walden*, the United States Supreme Court reiterated that "[d]ue process
                requires that a defendant be haled into court in a forum State based on his own
22              affiliation with the State, not based on the 'random, fortuitous, or attenuated'
                contacts he makes by interacting with other persons affiliated with the State."
23

24  2017 U.S. Dist. LEXIS 211198, *20

25         Plaintiff's proposed allegations merely confirm that Defendant directed his conduct at

26  Google, not California. This is insufficient as a matter of law.

27         **3.  Google's Terms of Service Do Not Create Jurisdiction.**

28



Finally, Plaintiff argues that Defendant is bound by Google's Terms of Service and cites *Automattic Inc. v. Steiner* for support. (Proposed FAC ¶¶ 45–47; Motion at 8). This reliance is inapposite. In *Automattic*, the court found jurisdiction because the defendant *affirmatively* accepted a forum selection clause in a "clickwrap" agreement when he created a user account. Here, Plaintiff alleges only that Defendant "utilized" Google's services, not that he created an account or affirmatively agreed to a forum selection clause that benefits *Plaintiff*.

Even if Defendant were bound by Google's TOS, Plaintiff is not a party to that contract and cannot use it to manufacture jurisdiction for Plaintiff's alleged causes of action. As held in *Browne v. McCain*, 612 F. Supp. 2d 1118 (C.D. Cal. 2009), a defendant's agreement to a platform's TOS does not constitute "deliberate activity in California" sufficient to confer jurisdiction for a claim brought by a *third party*. *Id.* at 1124. The Terms of Service governs the relationship between Google and its users, not between Defendant and the world. *See Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020).

In Lewis, the Northern District simply clarified that claims regarding a platform's terms of service generally apply only to the relationship between the user and the platform, not to third parties. 461 F. Supp. 3d 938. In *Lewis*, the court analyzed YouTube's Terms of Service in the context of a *user's claim against the platform itself*, demonstrating that these terms govern the contractual relationship between the service provider and its user. Defendant has not consented to be sued by *USA Herald* in California simply by using Google's services.

**4. Plaintiff's Alleged "15 Strikes" Are Legally Irrelevant and Largely Time-Barred.**

Plaintiff attempts to manufacture jurisdiction by alleging a "systematic" campaign of "15 DMCA strikes." (Proposed FAC ¶ 15).

First, the number of notices is legally irrelevant to the jurisdictional inquiry as detailed above. Second, Plaintiff's own pleading demonstrates that a third of these alleged "contacts" are time-barred and are irrelevant to this lawsuit. A claim under 17 U.S.C. § 512(f) is subject to a three-year statute of limitations. 17 U.S.C. § 507(b). Plaintiff filed this action on March 24, 2025. Accordingly, any notices sent prior to March 24, 2022, are time-barred. Plaintiff admits this in the



7

1    proposed FAC, stating that only violations "after March 15, 2022 . . . fall within the statute of

2    limitations".

3          Because the FAC relies on theories that have been uniformly rejected by the Supreme Court

4    and this Circuit, the amendment is futile.

5          **D.  Plaintiff's Motion Is the Product of Inexcusable Delay.**

6          Plaintiff possessed the Gorman Declaration and knowledge of the "15 strikes" in June

7    2025. (See Doc. 40-3). Yet, Plaintiff waited six months to file this motion. This delay is unjustified

8    and warrants denial of leave to amend.

9          "Relevant to evaluating the delay issue is whether the moving party knew or should have

10   known the facts and theories raised by the amendment in the original pleading." *Stambanis*, 2020

11   U.S. Dist. LEXIS 127426, at *7 (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir.

12   1990)). Late amendments are "not reviewed favorably when the facts and the theory have been

13   known to the party seeking amendment since the inception of the cause of action." *Id.* (quoting

14   *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1398 (9th Cir. 1986)).

15         Here, the facts regarding Plaintiff's own viewership were known to Plaintiff before the

16   original complaint was filed, and certainly by June 2025. Plaintiff has failed to justify this delay.

17   *See Jones v. Am. Airlines, Inc.*, No. CV 23-5569-MWF (BFMx), 2023 U.S. Dist. LEXIS 230313,

18   at *6 (C.D. Cal. Oct. 30, 2023) (denying leave to amend where plaintiff "failed to justify the delay

19   in bringing this Motion, especially where the factual bases were known prior to the Complaint");

20   *Yeung v. Bungalow Huntington Beach, LLC*, No. 8:23-cv-01573 MWC (DFMx), 2025 U.S. Dist.

21   LEXIS 202028, at *12 (C.D. Cal. Aug. 6, 2025) (finding delay unreasonable where plaintiff had

22   access to relevant information); *Silva v. Volkswagen Grp. of Am., Inc.*, No. CV 24-06367-MWF

23   (Ex), 2025 U.S. Dist. LEXIS 211355, at *6 (C.D. Cal. Oct. 10, 2025) (denying leave where plaintiff

24   "had all of the facts necessary to request leave to amend his Complaint" much earlier).

25         Plaintiff's delay suggests a tactical decision to wait until the eve of the decision on the

26   current motion to dismiss to force a delay. This is the definition of undue delay.

27

28



8

1    **E.  Defendant Will Be Prejudiced.**

2    Allowing amendment would significantly prejudice Defendant. Defendant has already

3    expended significant resources briefing the Motion to Dismiss based on the operative Complaint.

4    Granting leave here would require Defendant to file a new motion to dismiss attacking the exact

5    same legal deficiencies already at issue in the Motion to Dismiss, merely repackaged into a

6    proposed amended complaint, with irrelevant statistics.

7    Here, the prejudice of wasted motion practice and the tactical delay tactics of Plaintiff is

8    substantial, considering the history leading to this point with the available information known to

9    Plaintiff since prior to the inception of the action. Forcing Defendant to defend against a futile

10    amendment is inherently prejudicial, particularly after the inexcusable passage of time and motion

11    practice already addressing the issues raised, as part of Defendant's Motion to Dismiss.

12    **V.    CONCLUSION**

13    Plaintiff's proposed amendment attempts to revive a dying case with a "plaintiff-centric"

14    theory that *Walden* buried. The amendment is futile, the delay is inexcusable, and the prejudice is

15    real and substantial.

16    For these reasons, Defendant John Monarch respectfully requests that the Court DENY

17    Plaintiff's Motion for Leave to Amend.

18    Dated this 19th day of December, 2025.

19
20    **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

21    By:    */s/ Dustin J. Dorsey*
22    Connie M. Fickel, Esq.
        Christopher Lund, Esq.
23    515 S. Flower Street, Suite 1800
        Los Angeles, California 90071
24
25    Dustin J. Dorsey, Esq.
        1001 Galaxy Way, Suite 312
26    Concord, CA 94520

27    *Attorneys for Defendant John Monarch*

28

9

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 19th day of December, 2025, I served a true and correct copy of the foregoing **DEFENDANT JOHN MONARCH'S OPPOSITION TO PLAINTIFF'S CORRECTED FIRST MOTION FOR LEAVE TO AMEND, INSTANTER** on the parties set forth below through the Court's electronic filing/service system:

Reid A. Winthrop (SBN 223527)
WINTHROP LAW GROUP, P.C.
120 Newport Center Dr.
Newport Beach, California 92660
reid@winthroplawgroup.com

Jed Chedid, Esq. (OH SBN 101457)
Chedid & Co.
38355 Terrell Dr.,
North Ridgeville, Ohio
jchedid@chedidlegal.com
(Admitted Pro Hac Vice)
*Attorneys for Plaintiff*

By:   */s/ Ruth Ann Brandenburg*
        An Employee of QUINTAIROS, PRIETO,
        WOOD & BOYER, P.A.

