UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA HERALD LLC, | Case No.: 8:25-cv-00569-MEMF-KES |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS [DKT. NO. 24] AND DENYING LEAVE TO AMEND [DKT. NO. 71]** |
| v. | |
| JOHN MONARCH et al, | |
| Defendants. | |

Before the Court is Defendant John Monarch's Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 24 ("Motion"), and the Motion for Leave to Amend filed by Plaintiff USA Herald, LLC, Dkt. No. 71 ("Motion to Amend"). For the reasons stated herein, the Court GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND.

///

///

///

1

## I.    Background

### A.  Factual Background[1]

Plaintiff USA Herald LLC is a Delaware Limited Liability Corporation, with its principal place of business in the state of Delaware. Dkt. No. 1 ("Compl.") ¶ 25. USA Herald is a news publication that publishes articles on a daily basis and generates ad revenue therefrom. *Id.* ¶ 16. USA Herald relies on Google search results to generate ad revenue. *Id.* ¶ 19.

Defendant John Monarch, an individual and resident of Greenville, South Carolina, is a technology executive and business professional. *Id.* ¶¶ 2-3, 26.

USA Herald posted articles discussing: (1) the SEC shut down of a $30,000,000 fraud that Monarch was allegedly involved in, and (2) the $2,000,000 Monarch allegedly was ordered to pay regarding a cryptocurrency that Monarch failed to register with the SEC. Compl. ¶ 17. In 2021, Monarch, pursuant to the Digital Millenium Copyright Act ("DMCA") (17 U.S.C. § 512) and Google's internal policies, filed DMCA takedown requests in an effort to de-index USA Herald's articles from the Google search platform. *See id.* The DMCA takedowns alleged that USA Herald infringed on the copyright of Monarch. *Id.* Following the DMCA takedowns, USA Herald's articles were de-indexed from Google, resulting in ad revenue losses. *Id.* ¶ 21. In response, USA Herald submitted counternotices to have the articles restored on Google. *Id.*

### B.  Procedural History

On March 24, 2025, USA Herald filed suit in this Court alleging Monarch violated 17 U.S.C. § 512(f). Compl. On March 26, 2025, USA Herald filed a Motion for Preliminary Injunctive Relief. Dkt. No. 10. On June 3, 2025, Monarch filed a Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. Nos. 24-27 ("Motion"). Monarch also filed an Ex Parte Application to Stay USA Herald's Motion for Preliminary Injunctive Relief on June 3, 2025. Dkt. No. 28. USA Herald filed an Opposition to the Ex Parte Application on June 4, 2025. Dkt. No. 31. The Court denied the Ex Parte

---

[1] The following factual allegations are derived from the allegations in Plaintiff USA Herald LLC's Complaint, Dkt. No. 1 ("Compl."), unless otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they *are* true.

Application June 16, 2025. Dkt. No. 36. USA Herald also filed an Opposition to the Motion on June 16, 2025. Dkt. No. 31 ("Opposition"). Monarch filed a Reply to its Motion on June 23, 2025. Dkt. No. 38 ("Reply").

On June 25, 2025, USA Herald filed an Ex Parte Application to Supplement Declarations in Support of its Opposition. Dkt. No. 39. Monarch filed an Opposition to the Ex Parte Application on June 26, 2025. Dkt. No. 41. The Court granted the Ex Parte Application on June 26, 2025. Dkt. No. 42. On July 2, 2025, Monarch filed a Reply in Opposition to the Supplemented Declaration of Richard Gorman. Dkt. No. 44.

On July 9, 2025, Monarch filed a Motion to Stay USA Herald's Motion for Preliminary Injunctive Relief. Dkt. Nos. 45-49. On July 16, 2025, USA Herald filed an Opposition to Monarch's Motion to Stay. Dkt. No. 51. Monarch filed a Reply to the Motion to Stay on July 23, 2025. Dkt. No. 53. On October 21, 2025, the Court granted Monarch's Motion to Stay and ordered that USA Herald's Motion for Preliminary Injunctive Relief stayed pending resolution of the instant Motion. Dkt. No. 57.

On October 28, 2025, Monarch filed an Ex Parte Application for Clarification of the Court's Stay Order, after USA Herald submitted DMCA counternotices. Dkt. Nos. 58-61. USA Herald filed an Opposition to the Ex Parte Application on October 29, 2025. Dkt. No. 62. On November 13, 2025, the Court denied the Ex Parte Application. Dkt. No. 63.

On November 28, 205, USA Herald filed an Ex Parte Application to stay the Motion hearing pending USA Herald's forthcoming Motion for Leave to Amend. Dkt. No. 66. On December 2, 2025, Monarch filed an Opposition to the Ex Parte Application. Dkt. Nos. 67-68. USA Herald filed a Reply on December 3, 2025. Dkt. No. 69. The Court issued an Order denying USA Herald's Ex Parte Application on December 3, 2025. Dkt. No. 70.

On December 5, 2025, Plaintiff filed the Motion for Leave to Amend. Dkt. No. 71. On December 19, 2025, Defendant filed an Opposition. Dkt. No. 74 ("Opposition to Motion to Amend"). On December 20, 2025, Plaintiff filed a Reply. Dkt. No. 75 ("Reply ISO Motion to Amend").

On September 9, 2025, the Court found this Motion appropriate for resolution without oral argument. Dkt. No. 56; *see* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15..

II.     **Applicable Law**

A.  **Rule 12(b)(2)**

A defendant can move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Fed. R. Civ. P. 12(b)(2). The party asserting the existence of jurisdiction bears the burden of establishing it. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). If the court does not require an evidentiary hearing, a plaintiff "need only make a prima facie showing of the jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (internal quotation marks omitted). But "where the motion challenges the facts alleged, a Rule 12(b)(2) motion must be decided on the basis of competent evidence (usually declarations and discovery materials)." Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-D; *see Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (holding that a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit" when considering motion to dismiss for lack of personal jurisdiction).

Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Depending on the nature and extent of a defendant's contacts, if any, with a forum state, the appropriate exercise of personal jurisdiction may be either general—that is, the party is subject to any claims in that forum—or specific—that is, the party is subject only to claims arising out of its forum-related activities. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

To establish personal jurisdiction over a defendant, a plaintiff may show that a defendant consented to personal jurisdiction in the forum state through an agreement between the parties. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) ("We have noted that, because the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'") (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982));

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 585-87 (1991) (finding forum-selection clauses as valid agreements binding parties to the jurisdiction of the selected forum).

A plaintiff may also show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction is consistent with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006). California's long-arm statute is coextensive with the scope of what is permitted by due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Civ. Proc. Code § 410.10). Constitutional due process requires that jurisdiction be exercised over a nonresident party only if that party has "minimum contacts" with the forum, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

i.   General Jurisdiction

If general jurisdiction is established, a party may be "haled into court in the forum state to answer for any of its activities anywhere in the world," and its contacts with the forum state need not relate to the claim asserted. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger*, 374 F.3d at 801). General jurisdiction exists only when a party's contacts with the forum state are "substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal quotation marks omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924.

ii.   Specific Jurisdiction

The Ninth Circuit employs a three-prong test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted).

"If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155 (internal quotation marks omitted). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* The first prong may be satisfied with facts sufficient to show either "purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Pebble Beach*, 453 F.3d at 1155). Courts in the Ninth Circuit apply "the purposeful direction test when they arise from alleged tortious conduct." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

### iii.   Purposeful Direction

In the purposeful direction inquiry, courts apply the "effects test," which requires proof that defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (internal quotation marks omitted). This test looks "to the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." *Picot v. Weston*, 780 F.3d 1206, 1214–15 (9th Cir. 2015) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "[M]ere injury to a forum resident is not a sufficient connection to the forum," and "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* (quoting *Walden*, 571 U.S. at 290). With respect to the "express aiming" prong of the effects test, "something more" is required than a "foreign act with foreseeable effects in the forum state." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (internal quotation marks omitted). Importantly, "purposeful direction ask[s] whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)(cleaned up) (citing *Burger*

*King*, 471 U.S. at 474–75, 105 S.Ct. 2174 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)); *see also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023).

### B. Leave to Amend

Under Rule 15(a), leave to amend "shall be freely given when justice so requires." *Lopez v. Smith*, 203 F.3d 11222, 1127 (9th Cir. 2000). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Id. at 1130. Thus, leave to amend is denied only where allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. Discussion

Monarch bases the Motion on the following arguments: (1) Monarch never consented to personal jurisdiction in California, (2) Monarch is not subject to general personal jurisdiction in California, and (3) Monarch is not subject to specific personal jurisdiction in California. Because the party asserting the existence of jurisdiction bears the burden of establishing it, it is USA Herald's burden to establish Monarch is subject to personal jurisdiction in California. *Mattel*, 354 F.3d at 862.

### A. USA Herald Has Not Established Monarch's Consent to Personal Jurisdiction.

Monarch argues that he never consented to personal jurisdiction in California for the DMCA claims at issue. There is no express or implied arrangement between the parties designating California as the forum for the DMCA disputes. *See generally* Compl.

In DMCA related cases, a party who submits a counternotice must provide "a statement that the subscriber consents to the jurisdiction of the Federal District Court for the judicial district in which the address is located." 17 U.S.C. § 512(g)(3)(D). As Monarch discusses, he never submitted DMCA counternotices to Google related to the at issue content. Motion at 10-13. USA Herald concedes that Monarch never submitted DMCA counternotices. Opposition at 1 n.1. Thus, the Court finds that Monarch did not consent to personal jurisdiction in California on this basis.

The parties also contest the significance of Monarch's agreement to "Google's terms of use." Opposition at 12; Reply at 8-9. USA Herald contends this agreement "indicates that disputes will be resolved in California" based on the forum-selection clause in Google's terms of use. Opposition at 12. Monarch explains that the terms of use do not bind him to personal jurisdiction because "Google is not a party in this action, and the dispute does not arise from a breach of Google's terms of service agreement."[2] Here, the Court finds that the agreement to Google's terms of use is between Monarch and Google, and claims pertaining to the terms of use. *See Shute*, 499 U.S. at 585-87. USA Herald is not a party to the Google terms of use agreement and the at issue content has no relationship to Google's terms of use. Thus, the Court concludes that Monarch did not consent to personal jurisdiction in California based on the Google terms of use agreement.

**B.  USA Herald Has Not Established General Personal Jurisdiction.**

Monarch asserts that "Plaintiffs cannot establish general personal jurisdiction." Motion at 23. They detail how Monarch is "a resident of Greenville, South Carolina, where he resides," "has never resided in California, and [] does not own or lease any property there," and "has never designated any California address in connection with Plaintiff, Google, or otherwise." Motion at 24. In USA Herald's Opposition, it does not contest that Monarch is not subject to general personal jurisdiction in California. *See generally* Opposition.

The Court does not find that Monarch has systematic and continuous contacts with California to render Monarch "at home" in California. *See Goodyear*, 564 U.S. at 924. According to Monarch, he does not live in California and does not have a business in California.[3] The only contact with California is the DMCA takedowns filed with Google, an internet service provider with headquarters in California. Therefore, the Court finds that USA Herald failed to establish general personal jurisdiction.

---

[2] Monarch further argues that Jed Chedid's declaration discussing the effectiveness of Google's terms of use agreement should be disregarded because it was unsworn and not made under the penalty of perjury, thereby violating 28 U.S.C. § 1746. Reply at 9-10. Monarch's Reply was made prior to the Court's Order granting USA Herald's Ex Parte Application to Supplement Declarations, which cured the alleged defects. Dkt. No. 42.

[3] USA Herald asserts in its Opposition that Monarch does operate a California business. Opposition. at n.2. Even if true, it appears that USA Herald does not believe that this renders Monarch "at home" in California because it has not argued that there is general jurisdiction over him.

**C.  USA Herald Has Not Established Specific Personal Jurisdiction.**

Finally, Monarch argues that USA Herald failed to meet its burden to demonstrate Monarch is subject to specific personal jurisdiction in California.

As USA Herald's claims relate to alleged tortious conduct, in order to show specific personal jurisdiction, USA Herald must show that Monarch "purposefully directed" his conduct at California under the *Calder* effects test. *See Calder*, 465 U.S. at 789-90; *see also Walden*, 571 U.S. at 285; *Axiom Foods*, 874 F.3d at 1069; *Morrill*, 873 F.3d at 1142; *Picot*, 780 F.3d at 1214–15; *Mattel*, 354 F.3d at 862. Under that test, the Court must determine whether the Monarch "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [Monarch] knows is likely to be suffered in the forum state."[4] *Id.*

"Specific jurisdiction depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Courts have "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. "[O]peration of an interactive website does not, by itself, establish express aiming." *Herbal Brands v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). Rather, operation of a website "in conjunction with 'something more'" satisfies express aiming. *Id.* at 1092. To determine what constitutes "something more" when so many websites are available to individuals nationwide and worldwide, courts conduct a fact-specific inquiry and incorporate a variety of factors, such as the content of the website's subject matter, the technical method of advertising on the website, profits received from website users' presence or action on the site, website design mechanisms, and legal compliance schemes. *See Briskin v. Shopify, Inc.*, 135 F.4th at 739, 756, 759 (9th Cir. 2025) (finding personal jurisdiction where defendant Shopify "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws"); *Mavrix Photo v. Brand Techs., Inc.*, 647 F.3d 1218, 1230–31 (9th Cir. 2011) (finding personal jurisdiction proper where defendant's website

---

[4] In Monarch's Motion, he does not contest that the first factor of the *Calder* test is met; this Court, accordingly, finds that it is, and focuses on the second and third factors.

profited off of California residents by publishing forum-specific content and forum-specific third-party advertisements); *see also Will Co., Ltd. v. Lee*, 47 F.4th 917, 924 (9th Cir. 2022) (finding personal jurisdiction was proper where the defendant used website design strategy to make content load faster in a specific forum and tailored its privacy policy and terms and conditions to that forum). As the Ninth Circuit held in *Briskin*, "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *Briskin*, 135 F.4th at 758 (cleaned up) (citing *Ford Motor Co.*, 592 U.S. at 359, 141 S.Ct. 1017 (quoting *Keeton*, 465 U.S. at 774, 104 S.Ct. 1473); *Mavrix Photo*, 647 F.3d at 1230)).

                i.   <u>Monarch did not expressly aim his conduct at California.</u>

As to the second prong—express aiming—Monarch maintains that the DMCA takedowns "were not aimed at any California-based plaintiff or business activity in California." Motion at 15. Although the DMCA takedowns were sent to Google, a company headquartered in California, Monarch explains that Google is merely a third-party internet platform. Motion at 16.

In its Opposition, USA Herald contends that Monarch's DMCA takedown requests constituted intentional attempts to "destroy Google and [USA Herald's] relationship, including [USA Herald's] significant California viewership, through regular and consistent communications with California." Opposition at 1. According to USA Herald, the DMCA takedowns were sent to California and resulted in harm in California by terminating USA Herald's presence on Google search results. Opposition at 1-2. In addition, USA Herald argues that the sheer quantity of the DMCA takedown notices over a relatively limited period of time is indicative of regular and consistent conduct expressly aimed at California. *Id.*

But the complaint itself makes clear that the conduct alleged was not aimed at California. In the complaint, USA Herald emphasizes that Monarch's activities were part of a blackmail attempt directed at Gorman (USA Herald's owner). Compl. ¶¶ 5-6, 14, According to the complaint, Monarch was trying to harm Gorman through USA Herald and eliminate his ad-based revenue, rather than trying to impact Google or USA Herald's California readership. This differs from the Ninth Circuit's holding in *Briskin* and *Mavrix Photo* where the party intentionally sought to obtain and use personal

data of California consumers or profited from California-based content. *Briskin*, 135 F.4th at 756, 759; *Mavrix Photo*, 647 F.3d at 1230–31. USA Herald also contends that because California is one of its largest markets, Monarch's conduct was necessarily directed at California. Opposition at 5-6. But the Complaint posits that Monarch's activities were aimed at *Gorman*, Compl. ¶¶ 5-6, 14, not USA Herald's California audience. *Briskin*, 135 F.4th at 756, 759; *Mavrix Photo*, 647 F.3d at 1230–31. Therefore, the complaint does not support the view that Monarch expressly aimed his conduct in California within the meaning of the *Calder* effects test.

To be clear, the fact that Monarch's conduct may have had an impact on Google or USA Herald's California viewership is not enough. The Court find that this is the sort of "fortuitous" contact that the Ninth Circuit has expressly held is insufficient to meet the requirement of express aiming.

Additionally, the parties provide a plethora of case law in support of their respective positions on the second prong of the Calder effects test. *See* Motion; Opposition; Reply. Ultimately, these cases are not dispositive, and the majority are distinguishable. Monarch cites to *Walden* and *Picot* where the Supreme Court and Ninth Circuit refused to exercise personal jurisdiction because the defendant did not enter the forum state and did not contract with any person in the forum state. *Walden*, 571 U.S. at 289-91; *Picot*, 780 F.3d at 1212-13; *see* Motion at 15-16; *see also id.* at 16-17 (citing *Browne v. McCain*, 612 F.Supp.2d 1118, 1124 (C.D. Cal. 2009) (refusing to exercise personal jurisdiction where defendant posted a commercial and posted it on Youtube but did not have any conduct directed at California)); *id.* (citing *Prevail Legal, Inc. v. Gordan*, No. 20-cv-07173, 2021 WL 1947578, at *4-7 (N.D. Cal. May 14, 2021) (refusing to exercise personal jurisdiction because defendant's contact with a server owned by a third-party located in California constituted happenstance rather than expressed contact)). The Supreme Court held that the "mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 289-91. The instant matter differs from Monarch's cited cases as Monarch contacted Google, a California entity, and thus Monarch had some engagement with California. Compl. ¶ 17; Opposition at 11-12.

Monarch also relies on *Doe v. Geller*, 533 F.Supp.2d 996, 1005-06 (N.D. Cal. 2008) where the district court refused to exercise personal jurisdiction over a defendant as to a single DMCA takedown because the "only activity that occurred in California was Youtube's act of disabling access to plaintiff's video." *See* Motion at 18-20; *see also id.* at 16-17 (citing *Rep. of Kazakhstan v. Ketebaev*, No. 17-cv-00246-LHK, 2017 WL 6539897, at *7 (N.D. Cal. Dec. 21, 2017) (refusing to exercise personal jurisdiction where defendant hacked Google servers because there was no allegation that defendant believed the servers were in California and the "mere fact that Google—the company that owns the servers—is headquartered in California is not enough" to establish defendant "expressly aimed his conduct at California")). Here, Monarch submitted fifteen (15) strikes—well beyond the defendant in Doe—to Google, a California entity.

On the other hand, USA Herald cites to *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F.Supp.3d 816, 825 (N.D. Cal. 2014), where the district court exercised personal jurisdiction because defendant intentionally "accessed computer systems and obtained secure information" in California. *See* Opposition at 8-12. Here, Monarch did not access computer systems or obtain secure information. Rather, Monarch submitted fifteen DMCA takedown requests. Taken together, the cases relied on by the parties are distinguishable.

Further, although the Court is not bound by its sister district court decisions, the Court finds its analysis consistent with a number of district courts in cases cited by the parties. As in *Doe*, *Browne*, *Prevail*, and *Kazakhstan*, exercising personal jurisdiction due to conduct with a third-party internet provider without any intentional acts directed at the forum is unwarranted. *Doe*, 533 F.Supp.2d at 1005-06; *Browne*, 612 F.Supp.2d at 1124; *Prevail*, No. 2021 WL 1947578, at *4-7; *Kazakhstan*, 2017 WL 6539897, at *7. Unlike *NetApp*, Monarch did not intentionally target California systems or information. Rather, Monarch submitted DMCA takedowns from South Carolina to a third-party to remove content published by a Delaware-based company. Thus, Monarch's conduct is too attenuated to find sufficient contacts with California.

      ii.  <u>Monarch did not cause harm he knew would likely be felt in California.</u>

For the third prong, Monarch asserts that "Plaintiff has not alleged that Monarch knew any harm was likely to be suffered in California." Motion at 17. Citing *Yahoo! v. La Ligue Contre Le*

*Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006), Monarch states that USA Herald did not plead any specific injury or presence in California. *Id.* at 17-18.

In response, USA Herald contends that because "California is [its] second largest viewership and most engaged audience . . . Defendant[s] can reasonably expect [that] there are entire portions of USA Herald dedicated to California and California viewers."[5] Opposition at 10. And since Monarch sought removal of content from Google, which would include content in and geared toward California, USA Herald argues that Monarch "caused harm likely to be felt in California." *Id.*

The Court does not find that USA Herald has sufficiently demonstrated that Monarch caused harm that he knew was likely to be suffered in California. *See Calder*, 465 U.S. at 789-90. As discussed above, the Complaint alleges that Monarch was trying to harm Gorman. It certainly does not allege that Monarch knew of USA Herald's California readership or submitted the DMCA takedowns with the intent to harm USA Herald's California presence. *See generally* Compl.; Opposition; Dkt. No. 35-2. The allegations of the Complaint are insufficient to establish that Monarch knew he would cause harm likely to be felt in California.

Accordingly, the Court finds that USA Herald has not met its burden in establishing that the DMCA takedowns were expressly aimed at California or that Monarch knew any harm was likely to be felt in California. Therefore, Monarch is not subject to specific personal jurisdiction in California. The Court therefore need not address the other specific personal jurisdiction factors.

### D.  USA Herald Shall Not Be Granted Leave to Amend

When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 11222, 1130 (9th Cir. 2000). The Court therefore considers the complaint could be cured—that is, whether amendment would be futile. USA Herald has filed a separate Motion for Leave to Amend, Dkt. No.

---

[5] Monarch argues that the alleged damage to USA Herald's California audience is based on unsubstantiated conclusory statements made in Richard Gorman's Declaration as Gorman provides no data or foundation. Reply at 11. Monarch's Reply was made prior to the Court's Order granting USA Herald's Ex Parte Application to Supplement Declarations, which cured the alleged defects. Dkt. No. 42. The Supplemented Gorman Declaration provides a summary of analytics. However, the Supplemented Gorman Declaration does not alter the Court's finding that USA Herald failed to demonstrate a sufficient connection between Monarch and California to exercise personal jurisdiction over Monarch.

71, outlining the amendments that it believes will cure the jurisdictional defects identified in Monarch's Motion to Dismiss.[6] Motion to Amend at 7-8; Reply ISO Motion to Amend at 2-8. The Court discusses each below.

First, USA Herald proposes to amend its complaint to assert that Monarch has made fifteen takedown requests which constitute express aiming at California. This proposed amendment would not cure the defects identified above, particularly as the Court has already considered the number of requests made. To establish the express aiming, "something more" is required than a "foreign act with foreseeable effects in the forum state." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012). From *Walden* and *Picot*, the Supreme Court and Ninth Circuit provide that the Court must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285-86; *Picot*, 780 F.3d at 1214–15.

As discussed, it does not appear that the fifteen DMCA takedown requests, although submitted to a California company, were expressly aimed at California within the meaning of the applicable law. It appears that Monarch's aim as alleged was to prevent a Delaware-based publication from publishing alleged infringing content. And because the alleged infringing content was published on Google, Monarch's only recourse was to submit DMCA takedowns to a California-headquartered company. Opposition at 5-6. As such, the amendment will not support a finding of personal jurisdiction under the *Calder* effect test.

Second, USA Herald proposes to amend its complaint to allege facts concerning USA Herald's California viewership. This also does not cure the defects identified above as it does not establish that Monarch knew about USA Herald's California demographic or submitted the DMCA takedowns with the intent to harm USA Herald's California presence. Without specific allegations pointing to Monarch's knowledge or intent, the Court finds these additional allegations fail to

---

[6] In its Ex Parte Application to Stay, USA Herald explained this as follows:

> Plaintiff USA Herald LLC ("Plaintiff" or "USA Herald") respectfully applies ex parte for an Order staying the hearing on Defendant's Motion to Dismiss pending filing and briefing on Plaintiff's forthcoming Motion for Leave to Amend, Instanter.

If this Court were to find the issues Monarch raises warrant dismissal, which it should not, it would also find that these issues may be cured through amendment of USA Herald's Verified Complaint. USA Herald intends to invoke the liberal amendment standard to proactively amend its Complaint before it rules on these issues so as to conserve this Court's time and resources when ruling on Defendant's Motion to Dismiss.

establish that Monarch knew that harm would likely to be felt in California. Thus, the amendment will not support a finding of personal jurisdiction under the *Calder* effect test.

Third, USA Herald proposes to amend its complaint to allege that Monarch consented to the forum through its user agreement with Google. This proposed amendment does not cure the defects identified above as the Court has already considered whether the user agreement can establish consent. As discussed above, Monarch's agreement to Google's terms of use is relevant to the relationship and possible claims between Monarch and Google, but it has no bearing on USA Herald's claims. *See Shute*, 499 U.S. at 585-87. USA Herald is not a party to the Google terms of use agreement with Monarch and the at issue content has no relationship to Google's terms of use. Thus, the proposed amendment as to the user agreement is futile.

Taken together, each of USA Herald's proposed amendments are futile in that they do not cure the jurisdictional defects this Court has identified.

For this reason, the Court dismisses the claims WITHOUT LEAVE TO AMEND and DENIES the Motion for Leave to Amend.[7]

//

//

//

//

---

[7] There are five factors that the Court considers in determining whether to grant a motion for leave to amend. There are several factors that the Court considers in deciding whether to grant leave to amend a complaint: (1) whether the plaintiff has previously amended his complaint, (2) undue delay, (3) bad faith, (4) prejudice to the opposing party; and (5) futility of amendment. *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). The most important of these factors is prejudice to the opposing party. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The burden is on the party opposing amendment to show prejudice. *DCD Programs*, 833 F.2d at 187. Absent a showing of prejudice or a strong showing of the remaining factors, a presumption exists in favor of granting leave to amend. *Eminence Capital, LLC*, 316 F.3d at 1052.

In this case, three weigh in favor of amendment—no prior amendment, lack of prejudice, and lack of bad faith—but two weigh against amendment—undue delay and futility—because USA Herald has long known these additional facts and the amendments are futile as described above. Under the circumstances—given that the Court has already conducted a thorough analysis of the jurisdictional defects and considered all of the arguments raised in the Motion for Leave to Amend, the Court finds futility dispositive.

## IV.     Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1.  Monarch's Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 24, is GRANTED WITHOUT LEAVE TO AMEND; and

2.  USA Herald's Motion for Leave to Amend, Dkt. No. 71, is DENIED.

IT IS SO ORDERED.

Dated: March 30, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

16